UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:15-CR-00107-TBR

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.

PABLO SANDOVAL, *et al.*                                                               DEFENDANTS

**Memorandum Opinion and Order**

Pablo Sandoval was arrested after police discovered a large amount of heroin and methamphetamine in the trunk of Sandoval's car. Sandoval has moved to suppress the narcotics from evidence, claiming that law enforcement illegally searched his trunk. The Court held a suppression hearing on August 16, 2016, during which Detectives Kevin McKinney and Derrick Payne testified. Both detectives testified credibly and consistently. After reviewing the detectives' testimony and the evidence of record, the Court is satisfied that both the stop and search of Sandoval's vehicle, including its trunk, were justified based upon both probable cause and consent. Therefore, as more fully explained below, his motion to suppress [DN 44] must be DENIED.

**I. Background**

On the afternoon of August 29, 2015, Detective Kevin McKinney, then a ten-year veteran of the Louisville Metro Police Department's narcotics unit and a member of an FBI task force, was following behind Pablo Sandoval's car in his own patrol vehicle. McKinney admitted that Sandoval was already the target of a police investigation at that time. [DN 63 at 23.] At the intersection of Pinewood

Road and Produce Lane, McKinney observed Sandoval fail to signal his right turn from Pinewood onto Produce. [*Id.* at 18; *see also* DN 98 at 1.] He continued to follow Sandoval's vehicle, a blue Chevy sedan, as it turned left from Produce Lane onto Poplar Level Road. Just before Sandoval reached the Indian Trail intersection, McKinney observed Sandoval fail to signal once again, this time when changing lanes. [DN 63 at 4.] As Sandoval turned left onto Indian Trail, McKinney activated his emergency equipment and initiated a traffic stop. [*Id.*] Sandoval pulled into the parking lot of Indi's Restaurant. [*Id.*]

When McKinney approached Sandoval's vehicle, he noticed not only that Sandoval had a passenger, Steven Arciga-Coria, but also the "odor of marijuana coming from the vehicle." [*Id.*] The smell was apparent to McKinney when Sandoval handed McKinney his driver's license. [*Id.* at 29.] Detective Derrick Payne, who arrived very soon after McKinney initiated the stop, similarly approached the passenger side of Sandoval's car. [*Id.* at 50.] He testified that he "immediately could recognize the strong odor of marijuana coming from the vehicle." [*Id.*] After the detectives spoke with Sandoval and Arciga-Coria for a short while, they met at the rear of Sandoval's car, and Payne informed McKinney that he too smelled marijuana. [*Id.* at 55.]

Based upon the detectives' similar observations, they decided to search the vehicle. McKinney stated that he asked Sandoval for consent to search his car, which Sandoval granted. [*Id.* at 4.] McKinney was speaking in English, and believed that Sandoval understood what he was saying because Sandoval responded

2

in English. [*Id.* at 4-5.] Earlier, McKinney had asked Sandoval for his driver's license in English, and Sandoval did in fact produce his license. [*Id.* at 30.] However, McKinney admitted that he had no personal knowledge regarding whether Sandoval was proficient in the English language. [*Id.* at 31.]

After Sandoval gave his consent for the detectives to search his car, McKinney asked Sandoval and Arciga-Coria (in English) to exit the vehicle, and both men complied. [*Id.* at 35, 41.] Before the detectives proceeded with their search, Payne returned to his vehicle to retrieve his K-9 unit, intending to have the dog sniff the car for narcotics. [*Id.* at 57.] When Payne returned to Sandoval's vehicle with his K-9, he noticed a small bag of marijuana lying on the ground near Arciga-Coria, now seated with Sandoval on the curb. [*Id.* at 57-58.] Payne estimated that the bag contained ten to twelve grams of marijuana. [*Id.* at 58.] The marijuana was apparently discovered by McKinney, who testified that Arciga-Coria "had [the bag] in his pants when he got out" of Sandoval's car. [*Id.* at 45.] Payne then walked his K-9 unit around the vehicle, and the dog alerted that narcotics were present in the "rear portion of the vehicle." [*Id.* at 6-7.] When the detectives opened the trunk, they discovered a cardboard box containing what appeared to be several kilos of narcotics. [*Id.* at 7.] A field test of the drugs was positive for methamphetamine and heroin. [*Id.*] Sandoval and Arciga-Coria were then taken into custody. [*Id.*]

Sandoval now moves to suppress the narcotics found in the trunk, claiming that the detectives' search of his vehicle violated the Fourth Amendment. [DN

3

44.]¹ Shortly before the suppression hearing, Sandoval's counsel discovered that the government sought to uphold the search based in part upon the K-9 unit's indication that drugs were present. Since that time, the parties have engaged in extensive motion practice regarding the K-9 search, eventually culminating with the United States' representation to the Court that it does not intend to rely upon the dog sniff in establishing probable cause. Accordingly, the Court has not considered the actions of Payne's K-9 unit in reaching its decision.

Additionally, during the most recent hearing, Sandoval attempted to call Arciga-Coria, his co-defendant, as a witness. As he is awaiting sentencing, Arciga-Coria refused to testify, citing his Fifth Amendment privilege against self-incrimination. Relying upon *Hoffman v. United States*, 341 U.S. 479 (1951), and *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067 (6th Cir. 1990), this Court held that based upon the nature of Sandoval's questions, Arciga-Coria had a reasonable fear that any answers he gave might later be used against him during his sentencing, and he was therefore entitled to assert his Fifth Amendment rights. Sandoval offered no other evidence in support of his motion to suppress. This matter is now ripe for adjudication.

## II. Discussion

Sandoval's motion to suppress raises two distinct issues. First, did Detective McKinney conduct a lawful traffic stop of Sandoval's vehicle? And if the initial stop was lawful, were Detectives McKinney and Payne further justified in

---

[1] Although Sandoval is represented by counsel, he filed two *pro se* motions to suppress. [DN 33; DN 58.] The Court has considered his filings in ruling upon this motion.

searching Sandoval's truck without a warrant? As explained in more detail below, because McKinney observed Sandoval fail to use his turn signal, the Fourth Amendment and Kentucky law permitted him to initiate a traffic stop. Further, because both McKinney and Payne smelled the odor of marijuana coming from Sandoval's car, and because Sandoval gave McKinney his consent to search the vehicle, the detectives' search was reasonable under the Fourth Amendment. Therefore, the evidence seized from the trunk of Sandoval's care need not be suppressed.

## A. Traffic Stop

First, Detective McKinney had probable cause for his initial traffic stop of Sandoval's vehicle. Under Kentucky law, "[a] person shall not turn a vehicle or move right or left upon a roadway . . . without giving an appropriate signal." KRS 189.380(1). Courts interpreting this provision have held that KRS 189.380 applies to drivers changing lanes as well as those turning onto a different roadway. *Commonwealth v. Fowler*, 409 S.W.3d 355, 360-61 (Ky. Ct. App. 2012). An officer has probable cause under the Fourth Amendment to stop a vehicle when he observes a driver violate a traffic law. *See Whren v. United States*, 517 U.S. 806, 810 (1996). "[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). It follows, then, that McKinney had probable cause to stop Sandoval when he observed Sandoval fail to signal not once, but twice. *See United*

*States v. Colbert*, No. 3:10-CR-151, 2011 WL 2746811, at *3 (W.D. Ky. July 13, 2011) (traffic stop lawful when officers observed defendant fail to use turn signal). Moreover, because McKinney observed Sandoval commit those two traffic infractions, any subjective motivations he might have had for making the stop are irrelevant. *United States v. Bailey*, 302 F.3d 652, 656 (6th Cir. 2002) (citations omitted). Sandoval's constitutional rights were not violated when McKinney pulled him over for failing to use his turn signal.

## B. Probable Cause

Although Detective McKinney's initial traffic stop was lawful, whether his and Detective Payne's search of Sandoval's vehicle violated the Fourth Amendment is a separate inquiry. The Supreme Court has long held that because they are readily mobile, vehicles, unlike homes, are not subject to the Fourth Amendment's warrant requirement. *See, e.g.*, *Carroll v. United States*, 267 U.S. 132, 149 (1925). Rather, "if the search and seizure without a warrant are made upon probable cause, that is, upon a belief . . . known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid." *Id.*

The Sixth Circuit has repeatedly held that both the smell and presence of marijuana give police officers probable cause to search a vehicle. For instance, the court upheld a vehicle search in *United States v. Puckett* when an officer "smelled and saw in open view [] marijuana in the [passenger] seat" of the defendant's vehicle during a traffic stop. 422 F.3d 340, 343 (6th Cir. 2005). Similarly, in

*United States v. Foster*, the Sixth Circuit held that "the smell of marijuana coming from [the defendant's] vehicle . . . provided [officers] with probable cause to search the vehicle without a warrant." 376 F.3d 577, 588 (6th Cir. 2004) (citing *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993); *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002)). When such probable cause exists, "it justifies the search of every part of the vehicle and its contents that may conceal the object of the search," including the trunk. *United States v. Moxley*, 229 F.3d 1154, 2000 WL 1234320, at *3 (6th Cir. Aug. 23, 2000) (unpublished table decision) (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)).

Here, both Detective McKinney and Detective Payne testified that shortly after approaching Sandoval's vehicle, they readily ascertained the odor of marijuana emanating from within. Payne characterized the smell as "strong." Although neither detective specified whether the car smelled of burnt or fresh marijuana, the Sixth Circuit is not among the circuits that distinguish between the two. *See United States v. Robinson*, No. 1:07-CR-1, 2007 WL 2138635, at *3 (E.D. Tenn. July 23, 2007) (recognizing that unlike the Tenth Circuit, "the Sixth Circuit has explicitly indicated there is no difference between burnt and fresh-smelling marijuana in a probable cause analysis." (citing *Foster*, 376 F.3d 577)). Based upon the smell of marijuana alone, then, the detectives had probable cause to search Sandoval's trunk for evidence of the drug. *United States v. Carrera*, 966 F.2d 1454, 1992 WL 116006, at *2 (6th Cir. May 29, 1992) (unpublished table decision) ("The smell of marijuana . . . gave the officer probable cause . . . to search the vehicle,

7

including the trunk."). The discovery of marijuana on or about Arciga-Coria's person only serves to strengthen this conclusion. *See United States v. Burnett*, 791 F.2d 64, 67 (6th Cir. 1986) (marijuana found in floorboard gives probable cause to search entire vehicle, including sealed package in trunk). Even without the benefit of the K-9 sweep, Detectives McKinney and Payne possessed probable cause to search the entirety of Sandoval's car. Their search did not offend the Fourth Amendment.

### C. Consent

Had Detectives McKinney and Payne not had probable cause to search Sandoval's vehicle based upon the smell and observation of marijuana, the Court would still uphold their search on the basis of consent. A search is not unreasonable under the Fourth Amendment if an individual gives free and voluntary consent for that search. *United States v. Beauchamp*, 659 F.3d 560, 571 (6th Cir. 2011) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). "Whether a defendant's consent was voluntary . . . is a question of fact to be determined from the totality of the circumstances." *United States v. Valdez*, 147 F. App'x 591, 596 (6th Cir. 2005) (citing *United States v. Jones*, 846 F.2d 358, 360 (6th Cir. 1988)). "Relevant factors include the defendant's age, intelligence, and education; whether he understands his constitutional rights; the length and nature of the detention; and the use or coercive or punishing conduct by the police." *Id.* In order for a search to be upheld, officers need only reasonably believe that the search is consensual. *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990). "The

government bears the burden of proving, through 'clear and positive testimony' that the consent to search was given voluntarily." *Beauchamp*, 659 F.3d at 571 (quoting *United States v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998)).

Regarding the validity of Sandoval's consent to search, the main issue is the extent of Sandoval's ability to understand the English language. Indeed, the Court notes that during these proceedings, Sandoval has always required the assistance of an interpreter. However, this fact alone is not dispositive. "In determining whether an individual has sufficient comprehension of English to provide voluntary consent, courts examine his ability to interact intelligently with the police." *Valdez*, 147 F. App'x at 596 (quoting *United States v. Zapata*, 180 F.3d 1237, 1242 (11th Cir. 1999)). Detective McKinney testified that during their brief colloquy, Sandoval seemed to understand all the questions he was asked in the English language, and in fact responded to McKinney's questions in English. When McKinney asked Sandoval, in English, to provide his driver's license and to exit the vehicle, Sandoval complied. Based upon these observations, McKinney's belief that Sandoval understood him when he asked Sandoval for consent to search his car was not unreasonable. *See id.* (search voluntary when Spanish-speaking defendant provided license and responded to questions in English); *United States v. Valdez-Ruiz*, 81 F. App'x 544, 546 (6th Cir. 2003).

After weighing the other relevant factors, the Court is satisfied that Sandoval gave the detectives voluntary consent to search his vehicle. It is true that Detective McKinney did not inform Sandoval that he had the right to refuse

9

consent, or that he could revoke his consent after it was given. However, "[w]hile knowledge of the right to refuse consent is one factor to be taken into account," it is not an absolute prerequisite to establish voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *see also United States v. Justice*, 464 F. App'x 448, 453 (6th Cir. 2012) ("The fact that [defendant] was not explicitly advised of his right to refuse consent does not automatically deem [his] consent invalid."). Although this one factor might weigh against consent, no other hallmarks of coercion or involuntariness are present in this case. Sandoval was still in his vehicle when he gave consent. Only a few minutes had elapsed since the beginning of the stop. He did not appear to be under the influence of drugs or alcohol. The detectives did not use or threaten force to obtain Sandoval's consent. On these facts, the government has shown that when Sandoval agreed to allow Detectives McKinney and Payne to search his car, he did so freely and voluntarily. *Beauchamp*, 659 F.3d at 571; *see also United States v. Bueno*, 21 F.3d 120, 126-27 (6th Cir. 1994). Thus, even if the detectives had not smelled and observed marijuana, they would still have been justified in searching Sandoval's vehicle.

### III. Conclusion

Neither Detective McKinney's traffic stop nor his and Detective Payne's search of Sandoval's vehicle constituted an illegal search or seizure. Rather, at each step of their encounter with Sandoval and Arciga-Coria, the detectives' actions were reasonable under the Fourth Amendment. Both the traffic stop and the

vehicle search were justified by probable cause, and the search was further justified by Sandoval's free and voluntary consent. Accordingly, IT IS HEREBY ORDERED:

Defendant Pablo Sandoval's motions to suppress [DN 33; DN 44; DN 58] are DENIED.

CC: Counsel of Record